United States Court of Appeals,

Eleventh Circuit.

No. 95-8371.

MACON-BIBB COUNTY INDUSTRIAL AUTHORITY, Plaintiff-Appellant,

v.

NORD BITUMI, U.S., INC., Defendant-Appellee.

March 13, 1996.

Appeal from the United States District Court for the Middle District of Georgia. (No. CIV-89-95-2-MAC(CHW), Claude W. Hicks, Jr. Magistrate Judge.

Before TJOFLAT, Chief Judge, and RONEY and CAMPBELL[*], Senior Circuit Judges.

PER CURIAM:

This is an alleged subrogation claim by the fire insurer of a property owner against the allegedly negligent tenant of the property. On consent of the parties, United States Magistrate Judge Claude W. Hicks, Jr. decided the case. *See* 28 U.S.C. § 636(c)(1). (Section 636(c)(3) allows appeal from the magistrate judge's judgment to be taken directly to this Court). Judge Hicks held that under the terms of the lease, the parties agreed to a waiver of subrogation and entered a summary judgment for the defendant. We affirm, essentially for the reasons set forth in the Order from which this appeal is taken, the material parts of which are incorporated herein as an Appendix.[1] *See Tuxedo Plumbing &*

---

[*]Honorable Levin H. Campbell, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

[1]There has been a suggestion that our decision should be stayed pending the Georgia Supreme Court's consideration of *Southern Trust Insurance Co. v. Center Developers, Inc.,* 217

*Heating Co. v. Lie-Nielson,* 245 Ga. 27, 262 S.E.2d 794, 795 (1980).

AFFIRMED.

APPENDIX

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA MACON DIVISION

Macon-Bibb County Industrial Authority, Plaintiff,

v.

Nord Bitumi, U.S., Inc., Defendant.

Civil Action No. 89-95-2-MAC(CWH)

Before the U.S. Magistrate Judge

ORDER

.   .   .   .   .

On April 1, 1984, plaintiff and defendant entered into a five-year lease and option agreement.  On October 1, 1984, while the defendant was in possession of the leased premises, a fire damaged the property;  the INDUSTRIAL AUTHORITY contends that this fire was caused by the negligence of defendant NORD BITUMI and/or its employees.  On April 9, 1985, plaintiff was paid $104,955 for its loss by its insurer, St. Paul Surplus Lines Insurance Company, pursuant to an agreement styled as a loan receipt.  The total loss was $109,955;  there was a $5,000 insurance deductible. Thereafter, St. Paul caused this lawsuit to be filed in the name of its insured, MACON-BIBB COUNTY INDUSTRIAL AUTHORITY, seeking to recover from NORD BITUMI through its subrogation rights the money it paid to its insured for damages resulting from the fire.

---

Ga.App. 215, 456 S.E.2d 608 (1995).  It seems more efficient to issue this opinion and let the matter pend on a Petition for Rehearing if the parties are so advised.

In its motion for summary judgment, defendant NORD BITUMI, U.S., INC. contends that under the language of the lease the plaintiff waived its subrogation rights. The INDUSTRIAL AUTHORITY disagrees.

The lease in question contains the following relevant provisions:

*10(a) Lessor's Insurance. Lessor agrees that it will, at its own expense, except as hereinafter provided, keep the premises insured against loss or damage by fire with extended coverage endorsement in an amount sufficient to prevent Lessor from being a co-insurer under the terms of the applicable policies, but, in any event, in an amount not less than eighty percent (80%) of the full replacement value of the property of which the premises are a part as determined from time to time. If, during the term of this Lease or any renewal thereof, the cost of Lessor's fire and extended coverage insurance should be increased as a result of Lessee's occupancy, then Lessee shall pay such increase.*

*10(b) Lessee's Insurance. Lessee agrees to maintain, at its own expense, such fire and extended coverage insurance on Lessee's personal property and improvements located on the premises, in amounts as it may deem advisable....*

*12(a) Indemnity by Lessee. Lessee agrees to indemnify and hold harmless Lessor from and against all claims of whatever nature arising from any act, omission, or negligence of Lessee, or Lessee's contractors, licensees, agents or employees, or arising from any accident, injury or damage whatsoever caused to any person, or to the property of any person, occurring during the terms of this Lease in or about the premises, including the streets and roads upon the property of Lessor used by Lessee for access to and from the premises, or arising from any accident, injury or damage occurring outside the premises where such accident, damage or injury results, or is claimed to be resulted, from any act or omission on the part of the Lessee or its contractors, licensees, agents or employees....*

*12(c) Liability Insurance Requirements. For the foregoing purpose, the Lessee agrees during the term hereof to maintain adequate public liability and other insurance with reputable insurance companies approved by Lessor, and upon request, to furnish Lessor with certificates of insurance evidencing such fact. The insurance coverage to be maintained by Lessee shall be as follows:*

*(i) Comprehensive general liability insurance against*

*claims for bodily injury, death and property damage occurring in or about the premises, affording minimum single limit protection of One Hundred Thousand Dollars ($100,000) with respect to personal injury or death and property damage occurring or resulting from one occurrence; and*

*(ii) Workmen's Compensation and employer's liability insurance in accordance with the statutory requirements of the State of Georgia.*

This is a diversity case; thus, under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), Georgia law is applied to decide the substantive issues. Under Georgia law, the construction of a contract is a question of law for the court. O.C.G.A. § 13-2-1. *See also Early v. Kent,* 215 Ga. 49, 108 S.E.2d 708 (1959) (where the terms of the contract are plain and unambiguous, construction is for the court rather than the jury) and *Sims' Crane Service, Inc. v. Reliance Ins. Co.,* 514 F.Supp. 1033, 1036 (S.D.Ga.1981) (construction and interpretation of written contract is a matter of law for the court and properly subject to disposition on summary judgment), *aff'd* 667 F.2d 30 (11th Cir.1982). (Note: subsequent history, not in the original).

Under Georgia law, where parties to a business transaction mutually agree that insurance will be provided as a *part of the bargain,* such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party. *Tuxedo Plumbing & Heating Co. v. Lie-Nielson,* 245 Ga. 27, 262 S.E.2d 794, 795 (1980). *See Pettus v. APC, Inc.,* 162 Ga.App. 804, 293 S.E.2d 65 (1982); *Central Warehouse & Development Corp. v. Nostalgia, Inc.,* 210 Ga.App. 15, 435 S.E.2d 230, 232 (1993). *See also Frank Briscoe Co.*

*v. Georgia Sprinkler Co.,* 713 F.2d 1500, 1504 (11th Cir.1983).

Upon review of all matters brought to the attention of the court by counsel for the parties, the undersigned is convinced, particularly in light of the provisions of clause ten set out above, that under Georgia law there has been a waiver of subrogation by the parties in this case. The court specifically finds from the lease agreement itself that the parties mutually agreed to provide insurance coverage as a part of their bargain. The provisions of the lease speak for themselves and are unambiguous; both the INDUSTRIAL AUTHORITY and NORD BITUMI contemplated that in the event of fire damage such as that which occurred in October of 1984, they would look to the insurance coverage required by the terms of the lease to reimburse them for any fire loss. Indeed, NORD BITUMI was even required under the agreement (as part of the bargain) to pay for any increase in the fire and extended coverage insurance on the premises resulting from its occupancy.[2]

Plaintiff's argument that the indemnity clause (clause twelve set out above) shows that the parties intended for the plaintiff to still be able to pursue negligence claims against the defendant for damages to the premises is unavailing. The presence of an indemnification clause in a contract has not been found to override

---

[2]Under O.C.G.A. § 13-2-2, parol evidence is inadmissible to add to, take from, or vary a written contract; words in the contract generally bear their usual and common significance; and, the construction which will uphold a contract in whole and in every part is preferred. *See also Hornsby v. Holt,* 257 Ga. 341, 359 S.E.2d 646, 648 (1987) (under the parol evidence rule, in the absence of fraud, accident, or mistake, this court is not to go beyond the written terms of the contract to ascertain the parties intent).

a waiver of subrogation created as a result of a mutual insurance requirement.  *See* cases cited above, notably *Tuxedo.*

To support its argument that there was no "mutual exculpatory agreement," plaintiff INDUSTRIAL AUTHORITY relies heavily on the decision of the Court of Appeals of Georgia in *Alimenta Processing Corp. v. South Georgia Pecan Co.,* 185 Ga.App. 330, 364 S.E.2d 84 (1987).  In that case, the court found "a contrary intent ... so obviously expressed" in the lease contract between the parties. However, unlike *Alimenta,* this is not a case "where a contrary intent is so obviously expressed."  Moreover, as noted by the dissent in *Alimenta,* the presence in  *Tuxedo* of hold harmless language *similar* to the *Alimenta* release provisions relied upon by the majority in *Alimenta,* did not alter the Supreme Court of Georgia's decision in *Tuxedo.*  *See Alimenta, supra,* 364 S.Ed.2d at 86-87 (McMurray, J., dissenting) (noting also that the language in question further demonstrates the parties' intention to look to the insurance for protection against loss).

A careful reading of paragraphs 12(a) and 12(c) of the lease contract herein reveals these provisions were written to protect the plaintiff from *third party claims* arising from the defendant's (and defendant's agent's) negligence "in or about" and "outside" the premises.  The provision in question does not specifically mention any recovery for fire damage occurring to the premises itself;  it deals only with the protection from third party negligence claims.  *See Vasche v. Habersham Marina,* 209 Ga.App. 263, 433 S.E.2d 671, 673 (1993) wherein the court distinguished between provisions in a rental agreement covering damage caused by

a marina's negligence in launching and retrieving boats and loss occasioned by the theft of boats.

In addition, paragraph 12(c) of the lease agreement entitled *Liability Insurance Requirements* (emphasis added) evinces the intention of the parties that coverage afforded by *liability* insurance coverage rather than the parties themselves would pay for any losses covered by liability insurance. *See McAbee Construction Co. v. Georgia Kraft Co.,* 178 Ga.App. 496, 343 S.E.2d 513, 514-15 (1986). This dovetails nicely with paragraph 10(a) which reflects the same intention insofar as fire insurance coverage is concerned.

Under the circumstances outlined above, MACON-BIBB COUNTY INDUSTRIAL AUTHORITY cannot recover from NORD BITUMI, U.S., INC. for liability mutually agreed by the parties to be covered by insurance, and St. Paul Surplus Lines Insurance Company suing in the name of the INDUSTRIAL AUTHORITY under the terms of the loan receipt given upon payment of insurance proceeds cannot have rights superior to its insured. *See Tuxedo, supra,* 262 S.E.2d at 795.

.　　.　　.　　.　　.

SO ORDERED, this 8th day of MARCH, 1995.

/s/ Claude W. Hicks, Jr.

United States Magistrate Judge